Let counsel get settled here, and then I will call the next case, which is Free Speech Coalition v. Anderson. It is docket 23-4104. Good morning, your honors. May it please the court. I'm Jeff Sandman on behalf of the plaintiff appellants in this case. And with the court's permission, I'm going to aim to reserve about three minutes for rebuttal. Now, the district court made three critical errors in dismissing plaintiff's complaint alleging constitutional problems with Utah's age verification law. First, it looked at the attorney general's particular statutory duties, and it wrongly cast them instead as the generalized responsibilities for enforcing the law that have been deemed insufficient to satisfy the connection standard under Ex Parte Young for some time. Second, the court looked at the commissioner of public safety's duty to develop and operate a key component of technological architecture in the Age Verification Act. And the district court characterized that duty as too attenuated from enforcement to satisfy Ex Parte Young. And finally, the district court misunderstood the arguments made in the whole Women's Health v. Jackson case and denied a form of relief that plaintiffs never asked for in this case, thereby ignoring the basis for relief that was, in fact, requested. So I'd like to begin with the first of these errors concerning the attorney general's role in the enforcement. Counsel, before you get started, can I ask you a preliminary question? Was the district court correct in assessing the Eleventh Amendment questions first as opposed to standing? Judge Iod, it was the court's prerogative. The Wild Earth Guardian's case from the circuit says that when faced with jurisdictional questions involving either the Eleventh Amendment or Article III standing, the court can decide in which order to address them. And do you agree that we should start with, I mean, what would your preference or what would you say with regard to that choice? I think it makes sense to start with the qualified immunity question. Qualified immunity, excuse me. Listening to the case before me. Pardon me. It makes sense to begin with the ex parte young question. And I think the reason for that is courts have described these two questions, standing and ex parte young, as two sides of the causation coin. When in the rare circumstance they differ, the result as to each differs, it's usually qualified. It's usually ex parte young that tanks the argument. So as long as we survive by demonstrating a connection to the enforcement under ex parte young, we're going to establish standing as well. So I think the standing issues really do kind of move to the background in this case because they're basically subsumed within the ex parte young question. Okay, thank you. So the Attorney General has two particular statutory duties that are of relevance in this case. The first is the duty to vindicate state interests in litigation. And the second is the duty to opine on questions of law in a supervisory capacity for the benefit of executive branch officers. These duties are codified at Utah Code 67-5-1. One is 1B. The other is 1G. Now, the first of these duties was deemed sufficient to satisfy the ex parte young connection standard in both the Chamber of Commerce v. Edmondson case and the Petrella v. Brownback case. And the second of these duties was deemed sufficient to satisfy the connection standard in ex parte young in the Kitchen v. Herbert case. These are all recent authorities from the Tenth Circuit. This is the Hendrickson case, the most on point for us to look at. And that's a case where the authority to enforce it was given to an outside independent board, the PELRB. And here we've got authority to enforce being given to private citizens. It's really the same. We can certainly analogize our holding in Hendrickson, which said that the AG did not have the ability to enforce in that case. Why isn't Hendrickson controlling? Hendrickson certainly is one of the controlling authorities in this case, Judge. But we think it's— Why isn't it decisive? I think it's not decisive for a few reasons. First of all, because the court in that case recognized that the legislature had vested enforcement authority in another state actor. In other words— It was an independent body, the board. It was, but that's a state actor in that case. Did they say it was a state actor? I don't believe so. I don't believe so, no. But these were members appointed by the governor and insulated from— The point being the attorney general did not have the ability to enforce in that case because enforcement had been given expressly to the board. Here, same deal. Enforcement given expressly to private citizens, not to the attorney general. But there's a distinction, Judge Martz, in that the board in that case was represented by board members who were appointed by the governor, was specifically insulated from essentially— We refer to it as an independent body. But that's different from empowering effectively the world at large to bring claims on their own behalf. In that case, there is no state actor. Well, the question here isn't whether it's different. It's whether the attorney general somehow still has some power despite the fact that the legislature has chosen to give the power to private citizens. Your Honor, you're right. How do we get there? Well, I think we get there by looking at the language of Hendrickson itself. And Hendrickson distinguished the Petrella case, which I've just referenced, by noting that in the Petrella case, and now I'm quoting, the attorney general had general law enforcement powers and there was no indication that the statutory provisions at issue fell outside the scope of those powers. Right. The statute didn't say anything in that case about enforcement. Here, we have a statute that is very specific about who can enforce. That's why it's not like Petrella. That's why Hendrickson wasn't like Petrella. We do have the legislature telling us who can enforce, and it doesn't say anything about the attorney general. Your Honor, the statute says not just who can enforce. The statute, the Verification Act, says who can bring actions under the statute. That's a more specified, more nuanced standard than what enforcement is. This Court has recognized that. In the Prairie Band case, this Court identified that enforcement does not require the ability to compel or constrain. Enforcement is about assisting in giving effect to a statute. The attorney general has non-displaced statutory duties in this case that were the attorney general to act on them would qualify as participating in the enforcement. I think what might be helpful here as well is looking at the way that the Texas legislature legislated in the whole women's health case. The statute at issue there is called SB 8, also called the Heartbeat Act. And the legislature specifically divested all state actors from any enforcement authority in that case. In that case, the legislature wrote, notwithstanding any other law, the requirements of this subchapter shall be enforced exclusively through private civil actions described in the statute. No enforcement in this subchapter may be taken. If I can interrupt, Hendrickson was, there was no express divestiture of enforcement powers from the attorney general in that case either. And yet we said expressly, the powers expressly given to the board meant that the attorney general didn't have them. We did not require an express divestiture. But, Your Honor, in Hendrickson, the court did recognize that the Supreme Court of the State had recognized this independence of the board and that the board was essentially immunized from meddling by the governor. That was critical to the holding of that case. The court wouldn't court, Tenth Circuit wouldn't have discussed it otherwise. The Tenth Circuit painstakingly in Hendrickson went through this court's precedents and attempted to distinguish them. And the manner in which they distinguished Petrella indicates that we're on all fours with Petrella, not necessarily with Hendrickson. I also just would want to deliver the court's attention to the Edmondson case, which I think is our strongest authority. The Edmondson case predates Petrella, excuse me, Hendrickson. And under this court's precedent, to the extent that there is a conflict, it's Edmondson that holds. But in the Edmondson case, the court recognized the very same statutory duties that we're pointing to here were sufficient to demonstrate that the attorney general had a connection to the enforcement. In that case, an injunction in that case would prevent the attorney general, and I'm quoting, from filing lawsuits or defending against suits brought by contractors. Now that sounds like some esoteric provision of Oklahoma law, but it's not. And we know this because the Edmondson court cited to the Oklahoma Statute of Relevance, which is Oklahoma Statute 74 at Section 18bA3, in which the attorney general is empowered to initiate or appear in any action in which the interests of the state or the people of the state are at issue. That is exactly the statute, almost verbatim, that we're invoking in this case as the basis for the attorney general. Did Edmondson involve a situation like Hendrickson in this case where power was given specifically to another party, regardless of whether right now it's a state actor or not a state actor? It wasn't to my knowledge, Your Honor. Isn't Hendrickson the only case where we have an express statement in the statute giving power to another entity, regardless of whether it's public or not? That might be right, Your Honor. But again, I just want to clarify that providing one body with enforcement authority doesn't necessarily strip other potential enforcers of a statute. And in this case, by providing a cause of action to private litigants, there is no baked-in assumption that state officials with statutory duties are divested of those duties simply because, in the first instance, private actors may bring enforcement actions. No case has gone that far. The whole women's health case didn't go that far because that case was dealing with specific legislative wrinkles and a really tightly circumscribed statute drafted by the Texas legislature that Utah did not copy in this case. The statute in this case simply provides a cause of action to Utah citizens. It doesn't divest the attorney general of any enforcement role, and it doesn't divest the commissioner of any role in participating in maintaining and developing key architecture under this statute. So what is the AG's enforcement role? The role of the enforcement for the attorney general is twofold. First of all, it's the duty to vindicate state interests in litigation, or in other words, to prosecute or defend actions in which the state or any board or commission may be a party. In other words, if there's a challenge to this statute, or not even a challenge to this statute, if there is an enforcement action brought by a private litigant, it's the prerogative of the attorney general to defend the state's interest in that litigation. The state's interest being the constitutionality of the statute. The constitutionality of the statute. That would be the same in Texas, wouldn't it? It would, but we're not pointed in Texas to these particular duties of the attorney general because the Heartbeat Act specifically divested the attorney general of all enforcement role. Understood, but I thought you were saying that if the AG is defending the constitutionality of the statute, that would qualify as enforcement. It would, and the Texas statute denied a role for the attorney general in that respect. I don't know necessarily the nuances of the attorney general's statutory roles. I do know that the Heartbeat Act, SB 8 in the Texas whole women's health litigation, expressly deprived all state actors of, quote, enforcing the law. What other enforcement? The second sort of element of enforcement from the attorney general is the duty to opine on questions of law in a supervisory capacity for the benefit of executive branch officers. Meaning advising the legislature? Advising either the legislature, Judge Phillips, or an executive branch officer. Isn't that the case in every state? No, not necessarily. The AG doesn't advise the other branches? That's the prerogative of the legislature, and to some extent the constitution, to craft the bounds of the duties of that actor. And so if someone approached the AG and said, we have a legal question, here's our question, and the AG answered that, here's our opinion, only a court can tell you for sure the AG has enforced something? Yes, Your Honor, because he's exercising an enforcement capacity in a supervisory role. The Kitchen v. Herbert case says this very thing. It says the attorney general, via an advisory letter to the tax commissioner in that case, had essentially supervisory capacity over the tax commissioner. We've cited in our briefing an identical letter. I think in Kitchens we actually said the AG could compel compliance with the statute, because the county clerk was under the authority. That was with respect to the- Enforcement authority. I mean, that's what we said. Your Honor, that's correct with respect to the county clerk. I mean, there may have been an opinion, and that opinion may have been correct, but it wasn't the opinion that provided the enforcement authority. That's probably right, Your Honor. The defendant in that case was the county clerk. The court clerk who the AG would not have had authority over. But the court also went to pains to recognize that the attorney general had authority over the tax commissioner as well, and demonstrated that authority by virtue of this advisory letter. Your Honor, I see I'm running out of time. I'd like to reserve the little bit I have left for rebuttal. Thank you very much.  Good morning. May it please the Court. Sarah Goldberg on behalf of the Commissioner and the Attorney General. Your Honors, the only issue for the Court to decide today is whether it has subject matter jurisdiction to hear this case. The constitutionality of the Act is not at issue, nor is the wisdom of the Utah legislature in choosing to allow a private versus a public enforcement scheme. Instead, the question is whether the Commissioner and the Attorney General have the required connection to the enforcement of the Act to satisfy the ex parte Young exception to 11th Amendment immunity and the causation and addressability prongs of Article III standing. They do not. I was going to start with the Commissioner, but since opposing counsel spent most of his time on the Attorney General, I'll go there first. Your Honors, the only connection the Attorney General has to the enforcement of the Act is his general duty to enforce state law. We cited a myriad number of cases that say that this isn't enough. And I don't think opposing counsel did anything to distinguish or even acknowledge most of those. Petrella isn't such a case. First off, it wasn't a case like this one where there's a private enforcement mechanism and only a private enforcement mechanism. There, the Court said that the Attorney General did have specific enforcement authority under that statute. Edmondson is the same. Again, it's not a private enforcement case. And second, although it's true that the Court referenced the Attorney General's general duty to enforce state law, that was specifically applied to issues in the Act, like entering into state contracts. The Attorney General is someone who does that. He inserts the clauses in there. And he was also responsible for bringing cases against contractors who violated that statute. We don't have that here. The only thing that the Attorney General can do with regard to the statute is to, if there is a private enforcement suit, sure, Utah law allows him to intervene. But his standing in that suit is wholly dependent on the private parties there. If a private party brings such a suit, AG intervenes, and the private party decides not to continue on with that suit, I don't think the AG has any prerogative on his own to continue on with that lawsuit. I would direct the Court to the digital recognition case in the Eighth Circuit that specifically deals with this issue in regards to the Attorney General's duty to intervene in the Ex Parte Young analysis. I'm sorry, what's the case? It's a digital recognition network. It's in our brief. And can you tell me about the facts of that? It was a similar private enforcement mechanism case. It had to do with license plate readers, and there was a First Amendment challenge to that. And one of the arguments that the plaintiffs made was that the AG was a defendant, was that the AG was a proper defendant based on his ability to intervene in the private actions. And they said that that wasn't enough. Is that even really an argument here, that the AG can intervene? From what I heard from what opposing counsel just said, I mean, I think that was what his basis for the Attorney General's ability to enforce the law was, was to enforce the state's interest. And I think based on how the statute is written, that's the only way the Attorney General can do that here. I'd also say that you can't distinguish Hendrickson or Whole Woman's Health on the basis that they purportedly expressly divest the Attorney General from enforcement authority. That's not the Ex Parte Young test. The question is whether the Attorney General has the required connection to the enforcement of the act. It's not whether there's some other state actor or whether it specifically says the Attorney General can't enforce the act. So I don't think you can distinguish those cases on that basis. We didn't really talk about express divestiture in Hendrickson. But we did say the Attorney General doesn't have the power, even though there was no express divestiture. But did we really consider the question that counsel is arguing today? Which is that there would need to be some kind of express divestiture because otherwise the Attorney General just has that power and has that obligation. I think for the reasons I've just argued, because the Attorney General doesn't have a general duty or an ability outside his ability to intervene, that that express divestiture, whether it was discussed or not in Hendrickson, I don't think that matters. So what qualifies as enforcement? What would you say, given these facts, the AG can enforce? With regards to this statute? Nothing. Other than if there's a private enforcement suit between a private party and the commercial entity, and there was a defense based on constitutionality, the AG could intervene and defend the statute on that grounds. Well, what would take this act on the other side of the line? What would it take for the statute to give authority to the AG that was enough that we said, okay, AG has enforcement authority? I think it would be, I mean, some type of criminal penalty or potentially a state civil sanction would, I think, possibly put it across the line there. Okay, so AG people in court saying, here's what we want, Your Honor, whether it's civil or criminal. Well, not honestly just being in court saying, here's what we want. I mean, the statute would have to give that authority. I mean, if it was a criminal, if there's some kind of criminal sanction, I don't think there'd be any argument. The Attorney General does have, supervises state prosecutions for that reason. And, I mean, it might be a different question of what agency was enforcing a civil sanction, whether the AG would be a proper party, but depending on that, he might be. All right. Advising the agencies isn't enough. I don't think that could be the case. I mean, if that was the case, the AG would be a proper party in basically any suit suing a state agency or officer. And I think, I mean, as far back as the 1800s, the Supreme Court has said that that's not sufficient. I mean, if you're trying to challenge a state law, you don't get to just automatically bring the AG or the governor or another statewide official in as a defendant for that challenge. If you're challenging constitutionality or what? Correct. Don't you have to serve the AG if you're challenging constitutionality of a statute? That is correct. And that's so that the AG can be put on notice so that he can intervene. That person can appear and defend the constitutionality. Correct. And defend the constitutionality when that's at issue. But again, the AG doesn't have independent standing without the private parties to maintain that kind of suit. And I think when you look at the standing issue, I think it helps to kind of illustrate the lack of the connection that both the AG and the commissioner have to the enforcement of this act. So probably recognizing that the AG doesn't have enforcement authority, Free Speech Coalition in their complaint, they asked for an injunction to enjoin the AG from otherwise intervening to enforce the act. And so like I was just discussing, and that kind of injunction will do nothing to redress the injuries here because we still have private plaintiffs that can bring their own claims, regardless of whether the AG intervenes or not. And they asked for a declaratory judgment. There we have Whole Woman's Health being very clear that you can't, a declaratory judgment that the law is unconstitutional doesn't apply to the world at large. It only applies to the parties in the case and that that might potentially dissuade private parties from bringing their own suits will not satisfy the redressability requirements. Moving on to the commissioner's connection to the act. The only connection that he has is that he's tasked under a different statute with creating an electronic driver's license. This administrative duty doesn't supply the required connection between the commissioner and the enforcement of the act. He can't bring a cause of action under it. He can't decide what methods of age verification are reasonable. And he can't choose how the digital identification card will be utilized. I'm not aware of any case that involves a state officer who's tasked with administering an otherwise independent program that's incidentally connected to the challenge legislation where the state officer is a proper defendant under Ex parte Young. The Prairie Band case isn't it. They're the, I think it was the secretary of revenue. I don't remember the other. Director of Motor Vehicles. They were making independent discretionary decisions that the registrations or titles that issue didn't fit the reciprocity requirements. That was a discretionary decision. The commissioner here can't do anything like that. All he does is create a mobile driver's license under a totally different statute. He's not mentioned in the act, nor is frankly the mobile driver's license in the same terms as the mobile driver's license statute. This is much more like the ministerial duties in Peterson of creating the list of reciprocal states and simply choosing, again, under an unrelated act, the members of an execution team in Ballot. And again, the standing analysis here helps highlight the commissioner's tenuous connection to the act. When we look at the injunction, again, Whole Woman's Health made it clear you can't enjoin the law itself. And to be honest, I'm not entirely sure what they're asking for when you compare the complaint and the briefing. In the complaint, they're asking for the commissioner be enjoined from allowing data from the MDL program to be downloaded at all. But that's not going to redress Free Speech Coalition's injuries from having a reasonable age verification. In fact, if you take them at the word that it's the only possible method to comply, then there's no way. And they have even more of a problem. In their brief, they ask for an order requiring the commissioner to create a workable digital ID card that will allow compliance with the act. But again, this doesn't get rid of the reasonable age verification requirements. And it's also not what they ask for in their complaint. I mean, if you look at every cause of action in the complaint, it's not complaining about what the commissioner has done. It just says that the act is unconstitutional for X reason. And then for the declaratory judgment that the act is unconstitutional, again, we have the same problems I discussed before. I think Whole Woman's Health and Nova Health Systems confirm this, that we can't look at any deterrent effect on private individuals from bringing suit. Under the act for redressability purposes. And I want to also just note that neither of these jurisdictional inquiries depend on whether there's another appropriate state defendant or other avenue for a plaintiff to challenge the law. The question is whether the court has subject matter jurisdiction in this case, not some hypothetical case or not that there's some other hypothetical case that a plaintiff sometime could bring. Well, counsel, that's an interesting point. Is there, and you're saying it doesn't depend on this, but is there another proper defendant, state defendant? State defendant, no. It just, there is no one they could sue in this case. Correct. Because there is no, there is no state official that has the required connection to the enforcement of the act to satisfy either the Ex Parte Young requirement or Article III standing. And those are jurisdictional requirements that, I mean, it might be uncomfortable sometimes, but this court has to. Sometimes. This will be the first time that we've held that, isn't it? That there's no state official, no public official that can, that can enforce a legislative act. So there's no exception. I mean, I think the Nova Health Systems case came close. I mean, I realize that they weren't, like the AG and the governor weren't defendants there. But, I mean, Whole Woman's Health held that. And it's, again, it's not a, the court doesn't get to ignore its jurisdiction for those requirements. And it also doesn't mean that there's no way for the act to be challenged. There could be state, ways in state court to do a pre-enforcement challenge. I know Free Speech Coalition hasn't addressed that that's impossible. And again, they have the ability, if in a private suit, when there's enforcement by a private party, to raise that as a defense. What about Hendrickson? Do you agree that the board there was not an independent body or that it was, it was a public entity, as counsel suggested? Or does it support your argument that you can have an entirely independent? My understanding was that it was independent. I don't think there was anything in the statute that expressly said that it was fully independent from the government. Is there a difference between being an independent body and being a state actor? I mean, can you be an independent body and still be a state actor? Your Honor, I'm not, I don't, I'm not as familiar with this. That's the only case to me that is, is even slightly akin to what, what we have here. And again, I don't think it matters that there's a state actor or not. And that's, that's our position. So, Your Honors, if there are no further questions, I ask that you affirm the district court. Thank you. Thank you. Your Honors, I'm going to speak like the micro-machines man for my next 10 seconds here. General duties that were identified by my friend on the other side here, refer to background constitutional duties, not the precise statutory duties that the Attorney General has that are not displaced, that at least a trio of 10th Circuit panels have held are sufficient. And just, I see I'm out of time, Your Honors, but with respect to the Commissioner, the digitized identification card, it's not some incidental port aspect of the Age Verification Act. It provides the veneer of constitutionality, absent which there is no state channel by which to vindicate First Amendment rights. My friend says we have a problem if we were to knock out that provision. That's not the case, because severability analysis demonstrates that if we can challenge a portion of the statute, even a part that's not aggrieving us, and the entire statute falls with us based on a severability analysis, then we're vindicated in a standing analysis. Unless Your Honors have additional questions, I'll submit. Thank you. Thank you, Your Honors. You both went over about the same amount. Perfect. Thank you for your helpful arguments. The case is submitted. Counsel are excused.